a direct course thence, to the port or ports in Florida, without deviation or unreasonable delay. Giving to the word this interpretation, the duty to perform the covenant with diligence, and in a reasonable time, was an obligation imposed by law, as contradistinguished from one imposed by positive contract. It did not mean that the vessel should depart from the Tortugas instantly or immediately, but that she should, at that place, enter upon the voyage provided for in the charter, and proceed in a direct course to the place of loading in Florida. The degree of diligence and despatch, according to this interpretation, is a question of law, under the particular circumstances of the case.

It is insisted, however, that, admitting that the officers at the fort were justified in seizing the vessel, and that the party was disabled from performing his contract without any fault on his part, still, as he has a remedy over against the government, he is not exempt from responsibility for the delay. The answer is, that the remedy over is, within the contemplation of the rule in Paradine v. Jane, a legal remedy, which may be enforced in a court of justice.

Upon the interpretation thus given to the contract, the defence here is complete, even assuming that the officers of the fort were trespassers in seizing and detaining the vessel. Harmony v. Bingham, 2 Kern. 99; Parsons v. Hardy, 14 Wend. 215; Wibert v. New York & E. R. Co., 19 Barb. 36, 2 Kern. 245; Conger v. Hudson River R. Co., 6 Duer, 375.

Decree affirmed.

---

## Case No. 10,541.

### The ONTARIO.

[8 Ben. 500.] [1]

District Court, E. D. New York.    July, 1876.

SALVAGE—DERELICT—DISTRIBUTION.

1. Where a canal-boat in heavy weather broke loose from a tow, in going across the upper bay of New York, and was picked up by a tug and taken to Staten Island, the towing boat being present but not interfering with the labor of the tug; *Held*, that, while the canal-boat was not a derelict, as her towing boat was in sight and watching her, nevertheless the service rendered by the tug was a proper salvage service, and the court would award as a proper compensation $400 and costs, the value of the canal-boat and cargo being $1600.

2. A fireman, who at some risk, jumped on board the canal-boat to make a line fast, should receive a share equal to that of the master of the tug.

In admiralty.

Beebe, Wilcox & Hobbs, for libellants.

G. P. Hawes, for claimant.

BENEDICT, District Judge. This is an action to recover for salvage services rendered to the canal-boat Ontario, which boat, while

being towed in the harbor, between Robbins' reef and Bedloe's Island in a heavy sea, broke loose from her tow and, thereafter, having no one on board, was picked up by the tug Conover and taken safely to Staten Island.

Clearly a salvage service was performed. The canal-boat was adrift, and in such weather would have been wholly lost, if she had not been picked up. But she was not strictly derelict, for the tug Virginia Jackson, from whose tow she had broken loose, was present, and it cannot be said that she would not have rescued the canal-boat, if the Conover had not come to her assistance. It is nevertheless plain that, in view of the ability of the Conover to secure the canal-boat, the Virginia Jackson, although ready to make the effort if necessary, considered it prudent to leave the boat to be so rescued, rather than to endanger the other boats of the tow in an attempt to secure the one adrift.

The case being then not one strictly of derelict, I do not think it would be just to award one-third, although the value of the property saved is no more than $1600. And yet, considering the importance of encouraging the rendition of aid to this class of vessels, which are often, when being towed about the harbor and the sound, exposed to weather which they are poorly adapted to withstand, I shall give a liberal compensation for the time and labor expended. The libellant may have a decree for $400. In the distribution of this sum, the fireman, Matthew Kane, who, at some risk, volunteered to jump on board the canal-boat to fasten the line, will share equally with the master of the tug.

No tender having been made, the libellants must also recover their costs.

---

## Case No. 10,542.

### The ONTARIO.

[The case reported under above title in Brown, Adm. 480, is the same as Case No. 8,283.]

---

## Case No. 10,543.

### The ONTARIO.

### The HELEN MAR.

[2 Lowell, 40; 7 Am. Law Rev. 754.] [1]

District Court, D. Massachusetts.   Aug., 1871. [2]

COLLISION — LIGHTS — IGNORANCE OF STATUTE — PRESUMPTION AS TO FAULT — ABANDONMENT — TOTAL LOSS—WHALING VOYAGE—FREIGHT.

1. A whale-ship in the Arctic ocean, which had been twice refitted at San Francisco, after the statute of 29th April, 1864 [13 Stat. 58], concerning collisions, was passed, and which could have procured the colored lights at that port, *held* in fault for not having such lights,

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Hon. John Lowell, LL.D., District Judge, and here reprinted by permission. 7 Am. Law Rev. 754, contains only a partial report.]

[2] [Affirmed in part and reversed in part, in Case No. 13,695.]